Our next case this morning is Calvin Stearns doing business as CN Pizza v. Chris Newby doing business as Newby's Pizza. Representing the appellant is Mr. Crosby. Representing the appellate is Ms. Hines. Counselor, are you ready to proceed? Yes, Your Honor. Mr. Crosby, you may proceed. Mr. Crosby, you may proceed. Can we please have the court of counsel? My name is Tom Crosby. I represent the appellant. I'm here to enforce an arbitration clause. As noted in prior decisions of this court and others, the arbitration form of dispute resolution is favored. And in terms of the trial court's analysis of the ability of the party to arbitrate as opposed to go forward in the court, their analysis is circumscribed to determining whether or not there is a valid arbitration clause. In this particular case, there is no dispute that there was a valid arbitration clause. The issue that has been seized upon by appellee and the trial court is whether or not there was a generic description in the arbitration clause that would involve, make its scope broad enough to involve the disputes in this case. Where was the arbitration clause included? Was that in the operating agreement? In the operating agreement, Your Honor. When we reviewed the record, we did not see a signed operating agreement in the record. Was there a signed or an unsigned agreement somewhere? Your Honor, I believe it was in the record. I thought it was attached to the motion. If there was a signed agreement, I didn't see it at all. I saw it was an unsigned one. But there's no dispute then about the validity of the agreement, is that correct? That's correct. As a matter of fact, Your Honor, there is an accusation that Mr. Newby, the appellant, wrongfully disassociated himself from the arbitration agreement. And, of course, in that situation, this is a member-managed LLC, that the LLC Act provides that in the case of a wrongful or allegation of a wrongful disassociation, that the disassociated party remains liable in the LLC until the time of winding up, that it has to, that he has to participate in the winding up, and that any damages that are, that the LLC suffers due to the wrongful disassociation will be deducted from any distribution to that wrongfully disassociated member. So the idea that disassociation severs the ability of an LLC to reach the disassociated member and prevents the disassociated member from having any recourse through arbitration is belied by the statute itself. And that statute was, is applicable here. It was voted by the appellee in her response. Counsel, along those lines, I believe the appellee mentions something about the timing of the request for arbitration. Is this wrongful dissociation? Does that require a motion to compel arbitration prior to the dissociation? There's no, and I apologize, and I will supplement the record if the Court allows by putting in the operating agreement. But the operating agreement does provide that on 30 days' written notice, a member can disassociate. And there was an allegation in the complaint that Mr. Newby disassociated without that notice, therefore, it would be deducted. Understood. But was he required to request arbitration prior to the dissociation? No. No. There is not. As a matter of fact, Your Honor, there's no timelines set out to even, in the operating agreement, that tell when disassociation is appropriate. In other words, does it have to be prior to the winding up? Does it have to be after winding up? It's simply blank on that. However, there are, as I point out in the brief, there are in that, I quote in the brief, and therefore I thought it was in the motion for reconsideration, it's attached as part of the record, various terms in the operating agreement that continue after disassociation. But getting back to the focus of where we are here, is this an arbitral matter pursuant to the operating agreement? The answer, yes. Why? Because I don't know if it's pronounced Lau or Liu, the Supreme Court case, which this Court has cited in the past in deciding these motions, has a trifurcated analysis. And the first analysis, part of that analysis, is the be-all and end-all. Is there a valid arbitration agreement? There is. There's no dispute about that. So the dispute appears to be whether or not the, let's call him a wrongfully disassociated member, has the right to invoke the arbitration clause. That has to be determined by whether or not the operating agreement is specific. If not, you have to look at the other clauses which we've discussed that show that after disassociation, those members continue to have contractual rights, so there's no reason to believe that arbitration is any different. But if there's a question about that, if it's ambiguous, then that's for the arbitrator to decide. And we don't think that it's ambiguous, but if there is some confusion about it, as the Court knows, in the face of a valid arbitration agreement, that's for the arbitration panel to decide. Back to the dissociation. Ultimately, could an arbitrator deal with the issues related to the dissociation? Ultimately, the arbitrator is called to do that, not only by the operating agreement, but by the standards of the LEC Operating Act. And Appelli actually quotes that portion of the statute that would apply in their responsive brief. And it's 18035-50D on page 4 of the brief. If a member-managed company does not dissolve and wind up its business as a result of a member's wrongful disassociation under subsection B of this section, damages sustained by the company for wrongful disassociation must be offset against distribution otherwise due the member after the disassociation. So the arbitrators will determine whether or not the dissociate was wrongful, and if so, if any damages resulted from that, that would prevent Mr. Newby from acquiring any money due him at the time of winding up. But again, getting back to the principal point, there is a valid arbitration agreement. If there is any question about the scope of that arbitration agreement, it's for the arbitrators to decide. And I believe that this petition was brought as a 2619 motion to dismiss or on the alternative to stay, and that the trial court made some issue about that, that the fact that it was a 2619 motion somehow drew judicial admissions as to all the facts being admitted by the defendant, when in fact the 2619 says you have to go be, if there's some manner outside of the pleadings, in this case the operating agreement and the effect of that, it has to be brought to the court, not through a 2615 motion, but the 2619 motion. We did that, and it was in the alternative either dismiss it or stay it pending arbitration. That's the way these are brought to the court. I noticed that there were several brought to the court in that context, the last one being Rule 23, Dennis Clark v. Forsyth Energy. It's a procedural matter, and there's no form over substance arguments there. So I would simply ask the court to proceed on the basis that there is a doubt, there is no doubt that there's a valid arbitration agreement, and therefore that under the generic language of that arbitration agreement, which was quoted here arising out of the agreement, that this matter be arbitrated. As I pointed out in our brief, the plaintiff is the master of its complaint. The plaintiff in its complaint talks about the defendant's violation of the operating agreement of the LLC. Clearly by the pleadings themselves, these disputes arise out of the operating agreement because the breach of fiduciary duty that's alleged here on the part of the disassociated member is on the basis of the participation in the LLC through the operating agreement. So I think that the simple approach is the one that we are prescribed here, and that is in the face of a valid arbitration agreement, if there's any doubt as to the arbitrability, either legal or factual, that's a question for the arbitrators. And this motion should be granted, and the trial court's decision reversed. Thank you. Thank you. Questions, Justice Boyd? Not at this time. Mr. Shulman? No questions. Thank you. We have a chance for a rebuttal in a moment. It's high and it's ready to proceed. Good morning. May it please the Court, counsel. My name is Christine Hines. I represent the athlete in this case, Colin Stearns. And let me ask you also, the operating agreement that was on the record at pages C-106 to C-112 is an unsigned operating agreement. So is there any dispute that it's a valid arbitration agreement? No, Your Honor, there's no dispute about that. And I didn't even notice that the agreement was unsigned. I thought they had attached a signed copy to their complaint. But one thing that I think needs to be pointed out is that the motion to dismiss under 2619 that was filed by Mr. Newby, by its nature, admits that the complaint filed by Mr. Stearns is legally sufficient. That's supported by the case law that was cited in my brief. In addition, we assert that Mr. Newby has waived his right to seek arbitration by filing a substantial matter before the Court in addition to seeking arbitration. He has filed a motion to dismiss under 2619, which really can't get much more substantial than that, to try and throw out the entire complaint filed by Mr. Stearns. He also has admitted that he withdrew from the LLC on October 30th of last year. The operating agreement, as I believe Mr. Crosby stated, provides that any member of the LLC that wants to disassociate must give a 30-day notice. But let me interrupt you, counsel, though. He withdrew, and obviously it sounds like he didn't give notice. But wasn't he bound by the terms of the operating agreement even after his withdrawal? After his withdrawal is when all these allegations came to light as to what he had done. It wasn't until October 30th of 2023 that Mr. Stearns discovered the things that are alleged in the complaint. So in terms of being bound by the agreement under the LLC Act, he is liable for any damages that he causes after his disassociation. So under the LLC Act itself, he is liable for what he has done. I understand that. But isn't he also bound by the terms of the operating agreement? During the time of the operation of the agreement. But when he disassociates, lawfully disassociates. No. He has disassociated himself. But now he wants to wrap himself in the protections of the LLC. And as we discussed in our brief, the arbitration clause in this case is a narrow one. It contains the language, the three-pronged test, as Mr. Crosby alluded to, that first you look under the loop case that this Court has cited before, that if the dispute falls within the scope of the agreement, then of course there is arbitration. If the dispute does not fall within the scope of the agreement, then there is no arbitration. If it's unclear whether the dispute falls within the agreement, then the matter should be referred to an arbitrator. Under the law cited by Lew, if the language in the agreement is a narrow one that defines the terms requiring arbitration, no arbitration will occur, especially if the language of the agreement contains the phrase arising out of the agreement. But fails to include the phrase or relating to the agreement. So in this case, the operating agreement only contains the language, the phrase arising out of the agreement. And as the trial court found, that makes it a narrow clause and the present dispute does not fall within that clause. All of these actions occurred after the disassociation from Mr. Newby from the LLC. I thought there was allegations in that complaint of some alleged wrongdoing in the trial that it was employed and still within the LLC, correct? That were not discovered until after the disassociation from the LLC. So you're saying that the discovery of it is when that was attached, so to speak? They were not discovered until Mr. Newby disassociated himself by changing the locks on one of the restaurants, by removing the computers from one of the restaurants, removing the cash registers from one of the restaurants, closing down the website from one of the restaurants, closing the Facebook page from one of the restaurants, putting the Primo sign down on one of the restaurants, putting up his own sign, and opening up another restaurant all at the same time. So that is clear that he withdrew from the LLC and did not follow the requirements to request arbitration or give notice. He gave notice before he did these things. If arbitration is something of such an important aspect, isn't it logical that he would have requested arbitration prior to taking these actions? That did not happen. But the operating agreement did not lay out a timeline for requesting arbitration. Is that correct? It does not lay out a timeline. And doesn't Lou say that when there's a dispute involving the actual agreement, the arbitration clause in the agreement, that it's up to the arbitrator to decide that? But these actions happened outside of the agreement after one of the members disassociated himself from the agreement. But doesn't the agreement use a contemplate actions outside of the agreement when it talks about competitive activities after retirement or withdrawal? Wasn't that a term of the operating agreement? It is a term. Doesn't that contemplate, then, survival of actions outside of the agreement? If it is done wrongfully. If it is done not according to the agreement. And that's what has happened. After Mr. Newby withdrew from the agreement is when his house of cards came tumbling down on Mr. Stearns when they were discovered. And the LLC Act itself provides for once a member wrongfully disassociates himself from an LLC, he is liable for what he has done wrongfully to the LLC. But the Act doesn't specifically denounce an operating agreement as, I mean, the Act doesn't specifically go to any kind of renunciation of operating agreements. Is that correct? No, it doesn't renounce operating. In fact, it encourages operating agreements. So under 805-183-555, it does provide that a member's right to participate in the business terminates when he ceases to be a member. So Mr. Newby ceased to be a member when he disassociated himself from the LLC and took the actions to set himself up as a private person separate from the LLC. So he no longer has the right to participate in the LLC once he terminates and ceases to be a member, which obviously he did by disassociating himself on October 30th of last year. So, honestly, we believe, we assert that the trial court was correct in the decision that was made, and we as a district court affirm that decision. Do you believe Article 13 of the operating agreement has any bearing on whether or not Stern's actions arise under the operating agreement, the use of the word judgment in Article 13? Arising out of the agreement. That is a narrow, the narrow terminology. That under Liu would make it not eligible for arbitration because the language is narrow. Arising out of the language is arising out of the agreement. So all of these actions by Mr. Newby took place when he, after he disassociated himself from the agreement, from the LLC, and under the LLC Act, once you disassociate yourself from the LLC, your right to participate in that business in any way terminates because you have basically counted yourself out as a member. Thank you. Questions for Justice Sotomayor? No questions for Sotomayor. Thank you all. Mr. Barnes, do you have a problem? Yeah. Yes, Your Honor. In relationship to the absence of the record of a signed copy of the operating agreement, I showed counsel the signature page and was wondering if I could supplement the record in standard. Is that not in the record? I thought you said that. You didn't have it. We didn't see it. The pages I cited to were in the record C-106 through 112. What about the copy you have? It does not have the common law marking on it. Since there's no dispute, I don't see any need to supplement? No. All right. Just a couple of things. Getting back to the nature of this complaint, whether it arises out, if you look at the first amendment complaint, paragraph 3 states that the parties formed a limited liability company. And then in paragraphs 12 through 17, all premised on the behavior to be described above, breaches the fiduciary duty of loyalty and due care required under the Illinois Limited Liability Company Act. So whether it arises out of the operating agreement or the association with the LOC is determined by the plaintiff as the master of their complaint. And I disagree with counsel's interpretation of the LOC Act. It seems to me it's more like where someone tries to disassociate, doesn't jump to the hopes, is wrongfully disassociated. He's not out. It's a Michael Corleone thing. They drag him back in. And if you look at the section of the act that is quoted in the appellate's brief, in section C, it says a member who wrongfully disassociates from a member-managed company is liable to the company and to other members for damages caused by the disassociation. The liability is in addition to any other obligation of the member to the company or any other members. So his liability is not limited to just damages from disassociation, but his ongoing relationship with the LOC. No questions? Nothing further? No questions. Thank you. Thank you. We appreciate your arguments. We've read the briefs. We'll consider those along with your arguments. We'll take the matter under advisement and issue a decision in due course.